UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


CASEY HAYES PERRY,

    Plaintiff,

v.                                                                                      Case No. 2:12-cv-443
                                                                                 HON. ROBERT HOLMES BELL
STEVE MORRISON, et al.,

    Defendants.
_____/


**REPORT AND RECOMMENDATION**

Plaintiff Casey Hayes Perry, an inmate currently confined at the G. Robert Cotton Correctional Facility but who was confined at Chippewa Correctional Facility at the time of the events encompassed in the complaint, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Steve Morrison and Warden Jeffrey Woods, both of whom were employed at the Chippewa Correctional Facility during the pertinent time period.

Plaintiff's complaint alleges that Defendant Morrison assaulted Plaintiff and improperly filed a false misconduct ticket for Disobeying a Direct Order in retaliation for Plaintiff's filing of grievances against Defendant Morrison. Plaintiff's complaint also alleges Defendant Woods improperly supervised employees who were involved in the investigation of grievances filed by Plaintiff and engaged in a conspiracy to cover up the assault by Defendant Morrison.

On November 2, 2011, Defendant Morrison opened the door to Plaintiff's cell to deliver mail around 8:04 a.m. *See* Plaintiff's Amended Complaint, Docket #21 at 1-2. Plaintiff and

cellmate Edward Vesota were awakened by Defendant Morrison's actions. *Id.* at 2. Plaintiff stated "[t]his is harassment to pass out the Institutional-mail in the early morning hours to wake me up." Defendant Morrison replied "[I'm] doing [my] job." *Id.* Plaintiff contends that Defendant Morrison put the mail, which contained a staple in it, near Plaintiff's face then threw the paper at Plaintiff, hitting Plaintiff's cheek and narrowly missing his left eye. *Id.* When the paper fell to the ground, Defendant Morrison picked up the mail and placed it on Plaintiff's desk. *Id.* Defendant Morrison threatened Plaintiff with a "bunch of tickets" for the condition of the room. *Id.* Defendant Morrison then ordered Plaintiff to get dressed and to report to the Officer's Desk with his ID. *Id.* Plaintiff got dressed and went to the Officer's Desk a few minutes later. *Id.*

When Plaintiff arrived at the Officer's Desk at approximately 8:10 a.m., Defendant Morrison was not there. Plaintiff asked Resident Unit Officer Bush for the Shift Commander. *Id.* Bush directed Plaintiff to Assistant Resident Unit Supervisor Clark. *Id.* Clark advised Plaintiff to "[t]ake care of [the assault complaint] and follow regular procedures." *Id.* at 3. While Plaintiff was waiting to see Assistant Resident Unit Supervisor Clark to report the assault charge against Defendant Morrison, Defendant Morrison walked past Plaintiff twice. Docket #21 at 3. Defendant Morrison did not ask to see Plaintiff's ID on either occasion. *Id.* At 1:30 p.m. that day, after Plaintiff had filed his grievance form against Defendant Morrison, Defendant Morrison filed a Class II Major Misconduct Violation on Plaintiff for Disobeying a Direct Order. The misconduct ticket asserted that Plaintiff had failed to bring his ID to Defendant Morrison at the Officer's Desk. *Id.* at 6. A hearing was held on November 7, 2011, with Hearing Office Lieutenant B. Watson presiding. *Id.* at 7. Plaintiff was found guilty of the violation and punished with disciplinary sanctions of seven days loss of privileges. *Id.* at 7-8.

Plaintiff filed a Step I grievance against Defendant Morrison for assault on November 2, 2011. Docket #21-2 at 6. Larry Hough investigated the complaint and found that Plaintiff's version of the events differed from Defendant Morrison's version, and that no violation of policy had been proven. *Id.* at 12. Plaintiff filed a Step II grievance on November 22, 2011, appealing Hough's findings and asserting that Hough never interviewed Plaintiff about the incident. The grievance also accused Defendant Woods of engaging in a "[c]onspiracy" to cover-up Defendant Morrison's assault because Defendant Woods supervised Hough. *Id.* at 13, Docket #21 at 10. The Step II grievance was denied on December 4, 2011. Docket #21-2 at 17, 21. On December 9, 2011, Plaintiff filed a Step III grievance regarding the alleged assault, requesting the assistance of the "State Police of Michigan and any other Law Enforcement Agency to conduct an [sic] reasonable and fair investigation, and if so, to prosecute criminal charges imposed against Defendant, Steve Morrison for 'Assault and Battery.'" Docket #21 at 10-11. The Step II decision was upheld on March 13, 2012. *Id.* at 33.

Plaintiff filed a Step I grievance against Watson for violating Plaintiff's due process rights and by refusing to gather relevant witness statements and evidence on November 24, 2011. *Id.* at 10. On December 2, 2011, Plaintiff's Step I grievance was rejected because issues regarding the hearing process are non-grievable and should instead follow the process of a rehearing. Docket #21-2 at 27. Plaintiff's Step II grievance was rejected on the same basis on December 15, 2011. *Id.* at 31. Plaintiff then filed a Step III grievance on December 26, 2011. *Id.* at 32. The Step II rejection was upheld on March 13, 2012. *Id.* at 34.

Plaintiff claims that Defendants' actions violated his rights under the First and Eighth Amendments to the United States Constitution, as well as his rights under state law. Plaintiff is

suing Defendants in their individual capacities and is seeking compensatory and punitive damages, as well as declaratory relief.

Presently before the Court is Plaintiff's Motion for Default Judgment (docket #37) and Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #35). The time for filing a response has passed and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims Defendant Morrison retaliated against Plaintiff for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Plaintiff's claim that Defendant Morrison retaliated against Plaintiff for filing grievances is not supported by the evidence. Nothing in the evidence suggests that Defendant Morrison acted in any inappropriate manner in response to Plaintiff's conduct in filing grievances. In the hearing report, Hearing Officer Lieutenant Watson found:

> Prisoner Perry was ordered by [Resident Unit Officer] Morrison to "Bring your ID card up to me at the Officer's desk." At no time did Perry bring his ID to [Resident Unit Officer] Morrison. Perry heard and understood the order. The order did not counterman the order given by another staff member. The order did not place Perry['s] physical safety in jeopardy. The charge is upheld.

Defendants' Exhibit C, docket #36-4, p. 2 of 3. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). Furthermore, the act of tossing a letter towards Plaintiff's face is not such an adverse act that it would deter a person of ordinary firmness from continuing to file grievances. Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

Plaintiff claims Defendant Morrison assaulted Plaintiff by throwing stapled mail at Plaintiff's face. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v.*

*Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Not "every malevolent touch by a prison guard gives rise to a[n Eighth Amendment] cause of action."  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  However, in *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010), the Supreme Court held that significant injury is not a threshold requirement for an excessive force claim.  Instead, the "'core judicial inquiry' [is not] the extent of the injury," but "whether [the force used] was nontrivial and "was applied . . . maliciously and sadistically to cause harm.'" *Id.* at 1179 (quoting *Hudson*, 503 U.S. at 7).  As a result, an excessive force claim should not be dismissed on the basis that the Plaintiff's injuries were *de minimis*." *Id.* at 1179.

Plaintiff fails to prove Defendant Morrison used excessive force in violation of the Eighth Amendment.  The act of tossing a piece of stapled paper towards a prisoner is trivial at best and fails to reach the threshold of malicious and sadistic with the intent to cause harm.  Such conduct does not rise to the level of an Eighth Amendment violation.

Moreover, absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* *See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury. As a consequence, his claim for emotional damages is barred.

Plaintiff alleges that Defendant Woods failed to supervise employees during the investigations and hearing for Plaintiff's charge of Disobeying a Direct Order. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. See *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)).

Liability under § 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658 (1978). Thus, § 1983 liability cannot be premised upon mere allegations of respondeat superior. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under § 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), cert. denied, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), cert. denied, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), cert. denied 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Woods was personally involved in the activity which forms the basis of Plaintiff's claim. Defendant Woods's only role in this action involved the denial of administrative grievances or the failure to act. Defendant Woods

cannot be held liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).

Plaintiff also alleges Defendant Woods acted in a conspiracy to hide Defendant Morrison's alleged assault. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff fails to plead specific instances in which Defendant Woods directly conspired with Defendant Morrison. Instead, Plaintiff attempts to extend Defendant Woods' connection to the alleged assault charge through supervisory roles over staff involved in the investigations of Plaintiff's grievances. As stated above, Defendant Woods is not responsible in the capacity of respondeat superior. As such, Plaintiff fails to show that Defendant Woods directly conspired with Defendant Morrison. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Woods be dismissed for lack of personal involvement.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

As noted above, Plaintiff has filed a motion for default judgment, asserting that Defendants sent him an incomplete copy of the Brief in Support of their Motion for Summary Judgment. Defendants concede that the copy initially sent to Plaintiff was incomplete, and that they discovered their error when they received Plaintiff's motion for default judgment. Once Defendants realized their error, they sent a complete copy of the brief, which was received by Plaintiff on

January 8, 2014. In support of their assertion, Defendants attach a copy of the JCF legal mail log, showing that Plaintiff received legal mail on January 8, 2014. Exhibit A to Defendants' Response to Motion for Default, Docket #41-1. In Plaintiff's reply, he claims that he has still not received the complete brief, but Plaintiff fails to explain the notation in the Legal Mail Log showing that he received legal mail on January 8, 2014. The undersigned notes that the record supports Defendants' assertion that they sought to correct their error once it was discovered by sending Plaintiff a complete copy of the brief. Moreover, although Plaintiff claims he was prejudiced by Defendants' error, the record definitively shows that Defendants' conduct did not violate Plaintiff's constitutional rights. Therefore, the undersigned concludes that Plaintiff is not entitled to a default judgment.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Nor is Plaintiff entitled to a default judgment. Accordingly, it is recommended that Plaintiff's Motion for a Default Judgment (docket #37) be denied, Defendant's Motion for Summary Judgment (docket #35) be granted, and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   July 16, 2014